UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TROY D. PALUSKAS, a/k/a
TROY D. PALUSKA,

                Petitioner,               Case Number 01-10134-BC
                                                Honorable David M. Lawson

v.

BARBARA BOCK,

                Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

      The petitioner, Troy D. Paluskas, a state inmate presently confined at the Kinross Correctional Facility in Kincheloe, Michigan, has filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is in custody in violation of his constitutional rights. The petitioner was convicted on March 3, 1995 of second-degree murder, Mich. Comp. Laws § 750.317, and possession of a firearm in the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b, following a jury trial in a Detroit, Michigan Recorder's Court. The petitioner was sentenced to twenty-five to fifty years in prison on the second-degree murder conviction and a consecutive two-year prison term on the felony firearm conviction. In his pleadings, the petitioner challenges the constitutionality of the state trial judge's instructions to the jury and the use of his silence against him during sentencing; he also asserts that his appellate counsel was ineffective for failing to file a brief in his appeal. The respondent contends that the petitioner's claims are procedurally defaulted and otherwise without merit. The Court finds that the petitioner's procedural default is excused by the ineffective assistance of state appellate counsel. However, the Court does

not believe that the state convictions transgress the petitioner's rights under the Constitution or laws of the United States.  Therefore, the Court will deny the petition.

I.

The charges arose from the shooting death of Fred "Scotty" Burns during an altercation at a bar in Detroit, Michigan where the petitioner worked as a doorman.  The testimony at trial indicated that Burns' girlfriend was attacked outside of the bar by a gang of women who did not like her.  Burns tried to drive the women away and a fight ensued, drawing a number of participants.  At some point, Burns ran away from the altercation and the petitioner followed, firing a number of shots in Burns' direction.  Burns was killed by a bullet that struck him in the back and exited through his chest.

Following his conviction, the petitioner retained his trial counsel, Ben M. Gonek, as appellate counsel, and Gonek filed a claim of appeal on May 5, 1995.  However, Gonek never filed an appellate brief.  In an affidavit, Gonek explained that the petitioner was not responsible in any way for the failure to file an appellate brief in his case.  Gonek further states that he was suspended from the practice of law on July 11, 1997 for 180 days due to the neglect of appellate matters.  Affidavit of Ben M. Gonek, ¶¶ 5, 8.

The Michigan Court of Appeals dismissed the petitioner's appeal and ordered his appellate counsel to pay $200 for allowing the appeal to be involuntarily dismissed.  *People v. Paluski* (sic)[*], No. 185641 (Mich. Ct. App. May 7, 1996).  Thereafter, the petitioner filed a motion to vacate the

---

[*] The petitioner's name is spelled various ways in court records, cases, and the petitioner's own filings.  In most cases and court records, the petitioner's name is spelled "Paluska."  However, the petitioner spells his name "Paluskas" on his habeas petition.  This Court will use the spelling "Paluskas" for the purpose of clarity.

order of involuntary dismissal, which was denied by the Michigan Court of Appeals. *People v. Paluska* (sic), No. 185641 (Mich. Ct. App. October 16, 1996). The Michigan Supreme Court denied the petitioner's delayed application for leave to appeal, but held that "[i]n light of the circumstances that caused the Court of Appeals to dismiss the defendant's appeal, the denial of the application is without prejudice to the right of the defendant to petition the Recorder's Court for the City of Detroit to appoint counsel to assist the defendant if he chooses to file a motion for relief from judgment pursuant to MCR 6.501 *et seq*." *People v. Paluska* (sic), 456 Mich. 871; 569 N.W.2d 166 (1997).

The petitioner then filed a request for the appointment of counsel in the trial court, and the State Appellate Defender Office was appointed to represent him. New counsel then filed a motion for relief from judgment in the trial court, raising the issues that the petitioner raises in his application for habeas relief. The motion for relief from judgment was denied on the merits by the trial court. *People v. Paluska* (sic), No. 94-4980 (3d Judicial Circuit Court Dec. 7, 1998). The Michigan Court of Appeals denied the petitioner's application for leave to appeal, finding that he had failed to establish entitlement to relief pursuant to Michigan Court Rule 6.508(D). The court reasoned that "[a]lthough appellate counsel committed a serious mistake in failing to pursue the original appeal, defendant was not prejudiced where there is no merit to the substantive issues raised." *People v. Paluska* (sic), No. 216462 (Mich. Ct. App. June 25, 1999). The Michigan Supreme Court denied leave to appeal because the court was "not persuaded that the questions presented should be reviewed by this Court." *People v. Paluska* (sic), 461 Mich. 991, 610 N.W.2d 926 (2000). The petitioner now seeks habeas relief on the following grounds:

> I.    This Court should consider Troy Paluska's [sic] arguments on the merits because due to the ineffective assistance of his previous counsel, Ben Gonek, the Court of Appeals dismissed Paluska's appeal of right and no court has considered the merits of his issues.

II.     The trial judge violated Troy Paluska's [sic] rights to due process, to a fair trial, and to have the jury convinced of his guilt by proof beyond a reasonable doubt because the instructions employed condemned and incorrect language to describe the prosecutor's burden in a criminal case, including language on "moral certainty" and a doubt based on reason.

III.    By considering his silence and his failure to explain what happened at the shooting as factors against him and by sentencing Troy Paluska [sic] to a term of twenty-five to fifty years, the sentencing judge abused her discretion and violated Paluska's [sic] constitutional rights.

II.

The respondent initially contends that the petition is time-barred by the one-year statute of limitations contained in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), 28 U.S.C. § 2244(d). However, these arguments previously were raised by the respondent in a motion to dismiss and were rejected by this Court. *Paluskas v. Bock,* No. 01-10134 (E.D. Mich. Sept. 30, 2002). The respondent has failed to offer any new arguments in support of her claim that the petition is untimely, nor has she styled her presentation of this issue as a motion for reconsideration under E.D. Mich. LR 7.1(g) or a motion for relief from the order pursuant to Federal Rule of Civil Procedure 60(b). The Court finds no reason to change its prior ruling or dismiss the petition on that ground.

The respondent also argues that the petitioner's claims are procedurally defaulted because he raised them for the first time in a motion for post-conviction relief and has failed to establish cause and prejudice as required by Michigan Court Rule 6.508(D)(3) to excuse the default.

The doctrine of procedural default in the federal habeas context provides:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

-4-

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In this Circuit, the assessment of the affirmative defense of procedural default requires the application of the four-part test set forth in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction.
> . . .
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
> . . .
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Ibid.* (citations and footnote omitted).

In this case, it appears that a state procedural rule was in place during the relevant time, namely that a Michigan court may not grant relief upon a motion for relief from judgment under the rule if the grounds for relief in the motion could have been raised on appeal from the conviction or in a prior motion. *See* Mich. Ct. R. 6.508(D). It also appears that the Michigan courts actually enforced the rule in this case: the Michigan Court of Appeals expressly relied on Rule 6.508(D) when it denied leave to appeal. *People v. Paluska* (sic), No. 216462 (Mich. Ct. App. June 25, 1999). The Sixth Circuit Court of Appeals has held that Rule 6.508(D) is an independent and adequate ground for procedural default. *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

The remaining question is whether the petitioner has demonstrated "cause" for the failure to adhere to the procedure in place, and "prejudice" that flows the application of the rule. That

-5-

inquiry takes on double significance in this case, because the State rule itself provides relief from its strictures for those who make such a showing. *See* Mich. Ct. R. 6.508(D)(3) (excusing a procedural default if the defendant demonstrates "(a) good cause for failure to raise such grounds on appeal or in the prior motion, and (b) actual prejudice from the alleged irregularities that support the claim for relief"). The Court applies the same standards in assessing Rule 6.508(D)(3) and the federal cause-and-prejudice test.

> We note that M.C.R. 6.508(D)(3) derives its cause-and-prejudice standard from Supreme Court case law that articulates the constitutional standard for reviewing procedural default more generally. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). Thus, in assessing whether the second prong of the procedural default analysis is satisfied, and in assessing whether Petitioner was excused from the default, we make only one inquiry.

*Howard*, 405 F.3d at 478; *see generally People v. Jackson*, 465 Mich. 390, 398, 633 N.W.2d 825 (2001).

The petitioner asserts that the cause for his failure to raise his claims on direct appeal was attributed entirely to the ineffectiveness of his appellate counsel, who failed to file an appellate brief. Ineffective assistance of counsel may serve as "cause" for a procedural default if it rises to the level of a constitutional violation. *Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir. 2002). In fact, a "claim of ineffective assistance of [appellate] counsel . . . can serve as both cause and prejudice , excusing a procedural default in an underlying substantive claim." *Franklin v. Anderson*, __ F.3d __, __ (6th Cir. Jan. 9, 2006), *slip opinion* at 3. The ineffective assistance of counsel claim must not itself be procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). However, in this case, the petitioner raised his claim of ineffective assistance of appellate counsel in his motion for relief from judgment in the state court and properly exhausted the issue.

-6-

To show a violation of his constitutional right to counsel as a result of counsel's ineffective assistance, the petitioner must fulfill both prongs of the *Strickland test*: he must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that he was prejudiced by counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 688, 693 (1984). The state court of appeals appears to have concluded that the failure of the petitioner's appellate counsel to file a brief in his case was objectively unreasonable. This Court agrees. The Sixth Circuit has held that defense attorney's failure to appeal a judgment upon the request of a defendant is a *per se* violation of the Sixth Amendment right to counsel, regardless of whether the appeal would have been successful. *Ludwig v. United States*, 162 F.3d 456, 458 (6th Cir. 1998); *see also Deitz v. Money*, 391 F.3d 804, 810 (6th Cir. 2004). "Without question, an attorney's failure or refusal to abide by established time deadlines in handling a client's appeal is conduct falling below the minimal standards of competency that federal case law has imposed upon counsel to satisfy constitutional safeguards." *White v. Schotten*, 201 F.3d 743, 752 (6th Cir. 2000), *overruled on other grounds by Lopez v. Wilson*, 426 F.3d 339 (6th Cir. 2005). Furthermore, when counsel's deficient performance leads to the forfeiture of a judicial proceeding, the prejudice prong of the *Strickland* test is presumed. *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000). The Court determines, therefore, that the petitioner has satisfied the cause-and-prejudice test. The Court will address the merits of the petitioner's claims.

III.

Although the petitioner was convicted in 1995, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), govern this case because the petitioner filed this habeas petition after the AEDPA's effective

date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  That Act "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

> As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:
>
> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law.  *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).  Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000); internal quotes omitted).  Additionally, this Court must presume the correctness of state courts' factual determinations.  28 U.S.C. § 2254(e)(1) (stating "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct"); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (observing that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

-8-

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc); *Lewis v. Wilkinson*, 307 F.3d 413, 418 (6th Cir. 2002).

## A.

The petitioner first contends that his right to a fair trial was violated when the state trial judge instructed the jury on reasonable doubt at the conclusion of trial. The trial court instructed the jury

-9-

that the petitioner was presumed innocent and that he began the trial with a "clean slate." Tr. (Mar. 3, 1995) at 51. The court further explained that if no evidence was presented in the case, "the presumption of innocence alone would be sufficient to acquit the defendant." *Ibid*. Finally, the court stated that the presumption of innocence would abide "unless and until you as jurors are satisfied beyond a reasonable doubt of the defendant's guilt from all of the evidence in the case." *Ibid*. The trial court then gave the jury the following definition of reasonable doubt:

> Now, what do I mean by proof beyond a reasonable doubt? In the general nature of things, it is rarely possible to prove anything to an absolute certainty. Proof beyond a reasonable doubt is established if the evidence is such as you would be willing to rely and act upon in the most important of your own affairs.
>
> To put it another way, the [P]eople do not have to eliminate all doubt. The [P]eople are not required to eliminate and to exhaust every possibility of anything that might conceivably have happened. But the proofs presented by the People must eliminate any doubt based upon reason. The People must eliminate any doubt arising out of the evidence which has a real, a rational, and a reasonable basis.
>
> And the reason that the People don't have to, and I think very often people sort of expect here to have the People remove every doubt, every scintilla of doubt. Well, the reason it doesn't require us to do that as lawyers, because that's impossible; absolutely impossible to prove anything, you know, beyond any possibility that there may be– now, there's always doubt everywhere, doubt about something or other. But the People have to eliminate the important doubt.
>
> If in considering all of the evidence you find that you entertain a doubt, a fair doubt, a real doubt based upon reason and common sense about the establishment of any of the essential elements in the case, then you must give the benefit of that doubt to the defendant.
>
> If, after considering all of the evidence, you do not have doubt based upon reason but you're convinced to a moral certainty that the guilt of the defendant has been established, the mere fact that there is or that there may be a remote or a far removed possibility that the defendant did not commit the offense, that is not the kind of doubt which would entitle a defendant to a verdict of not guilty.
>
> The reasonable doubt may arise not only from the evidence but from a lack of evidence. A defendant hasn't the duty to present evidence to create doubt. Doubt might be created if in fact you find it from an absence of evidence by the People.

> The burden always remains upon the People to prove the accused guilty beyond a reasonable doubt of every essential element of the crime charged, and a defendant has a right to rely upon the failure of the People to establish the proofs if they do not. The defendant, of course, may also rely upon evidence brought out by cross-examination of the People's witnesses.

*Id.* at pp. 51-54.

It is, of course, beyond debate that the State must prove each element of a charged offense beyond a reasonable doubt in order to sustain a conviction. *See In re Winship*, 397 U.S. 358, 363 (1970). This burden of proof has been referred to as "an ancient and honored aspect of our criminal justice system," *Victor v. Nebraska*, 511 U.S. 1, 5 (1994), and, notably, it "plays a vital role in the American scheme of criminal procedure. Among other things, it is a prime instrument for reducing the risk of convictions resting on factual error." *Cage v. Louisiana*, 498 U.S. 39, 40-41 (1990), *overruled in part on other grounds in Estelle v. McGuire*, 502 U.S. 62, 73 n.4 (1991) (quoting *Winship*, 397 U.S. at 363) (citation omitted). The Supreme Court has never prescribed specific language that is required to convey the notion of reasonable doubt, and some courts even have found that the term "reasonable doubt" is self-defining and urge trial courts to give no explanatory instruction. *See, e.g., United States v. Walton*, 207 F.3d 694, 696 (4th Cir. 2000) ("There is no constitutional requirement to define reasonable doubt to a jury."); *United States v. Thomas*, 774 F.2d 807, 811-12 (7th Cir. 1985) ("We have repeatedly admonished district courts not to define 'reasonable doubt' . . . because often the definition engenders more confusion than does the term itself.") (quoting *United States v. Martin-Trigona*, 684 F.2d 485, 493 (7th Cir. 1982)). On habeas review, the proper inquiry for a court assessing a reasonable doubt instruction is whether there is a reasonable likelihood that the jury did apply the jury instruction in an unconstitutional manner. *Victor*, 511 U.S. at 6.

-11-

Here, the petitioner contends that the reasonable doubt instruction was deficient because it contained previously condemned and incorrect language that reduced the prosecution's burden of proof. The petitioner contrasts the instruction given in his case with a standard instruction for reasonable doubt. The petitioner first challenges the instruction because it was couched in the following terms: "Proof beyond a reasonable doubt is established if the evidence is such as you would be willing to rely and act upon in the most important of your own affairs." In *Holland v. United States,* 348 U.S. 121, 140 (1954), the Supreme Court upheld the constitutionality of a similar instruction, where reasonable doubt was defined as the kind of doubt "which you folks in the more serious and important affairs of your own lives might be willing to act upon." Although the Supreme Court counseled that the instruction should have been framed in terms of the kind of doubt that would make a juror hesitant to act, rather than the kind of doubt that he would be willing to act upon, the Court concluded that "the instruction as given was not of the type that could mislead the jury into finding no reasonable doubt when in fact there was some." *Ibid; see also United States v. Stewart*, 306 F.3d 295, 306 (6th Cir. 2002)

Applying *Holland*, the Sixth Circuit has held that a jury instruction that defined proof beyond a reasonable doubt as "proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs" was not contrary to, or an unreasonable application of, clearly established federal law so as to warrant habeas relief. *Seymour v. Walker*, 224 F.3d 542, 557-58 (6th Cir. 2000).

The petitioner also alleges constitutional error based on the trial court's instruction to the jury that they must assign a reason to their doubt. However, when viewed in the context of the instructions as a whole, the trial court's instruction to the jurors that they should have "a reason" for

-12-

their doubts did not lower the prosecution's burden of proof because the instruction merely conveyed to the jury that a reasonable doubt must be based on reason, as opposed to fancy, whim, or conjecture. *See United States v. Dale*, 991 F.2d 819, 853 (D.C. Cir. 1993).

The petitioner further reads the state trial court's instructions as equating reasonable doubt with an "important doubt," a term similar to "substantial doubt," which he claims has been criticized by the Supreme Court. In *Cage v. Louisiana*, the Supreme Court held that an instruction that defined reasonable doubt in terms of "grave uncertainty" and "actual substantial doubt," and required conviction based upon "moral certainty," could have been interpreted by a reasonable juror as allowing a finding of guilt based upon a degree of proof below that required by the Due Process Clause. *Cage*, 498 U.S. at 41 (1990). In reversing the conviction, the Supreme Court found that terms like "substantial" and "grave," in common parlance, "suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard." *Ibid*. When combined with the reference to moral certainty, a reasonable juror could have been confused by the instruction and interpreted it to overstate the required degree of uncertainty. *Ibid.*

In *Victor v. Nebraska*, however, the Supreme Court held that reference to the term "substantial doubt" alone was not sufficient to render a reasonable doubt instruction unconstitutional. 511 U.S. at 20. The Court noted that its concern in *Cage* was that the jury would interpret the term "substantial doubt" in connection with the preceding term "grave uncertainty," leading to an overstatement of the doubt, and an understatement of the State's burden of proof. *Ibid.* By contrast, the Court found that Nebraska's jury instruction, which equated reasonable doubt with "substantial doubt," did not violate due process because in the context in which it was used, the term "substantial doubt" was used to distinguish an actual and substantial doubt "from a doubt arising

-13-

from mere possibility, from bare imagination, or from fanciful conjecture." *Ibid.* The Supreme Court further noted that the "explicit distinction between a substantial doubt and a fanciful conjecture was not present in the *Cage* instruction." *Ibid.* The Court concluded by explaining that the substantial doubt instruction was not misleading because

> the instruction provided an alternative definition of reasonable doubt: a doubt that would cause a reasonable person to hesitate to act. This is a formulation we have repeatedly approved . . . and to the extent "substantial" denotes the quantum of doubt necessary for acquittal, the hesitate to act standard gives a common sense benchmark for just how substantial such a doubt must be.

*Victor*, 511 U.S. at 20-21.

In the present case, the state trial court's use of the term "important doubt" did not impermissibly lower the burden of proof when the rest of the explanation is considered. The trial court introduced this term after explaining to the jurors that the prosecutor did not have to remove all doubt, but the prosecutor had to remove all doubt based upon reason. Moreover, the trial court previously had instructed the jurors that proof beyond a reasonable doubt would be established if the evidence was such that the jurors would be willing to rely and act upon it in the most important of their affairs. In the context of the entire instruction on reasonable doubt, the court's use of the term "important doubt" did not violate due process.

Finally, the petitioner believes that the term "moral certainty" in the reasonable doubt instruction impermissibly lowered the burden of proof. As noted, in *Victor v. Nebraska*, the Supreme Court limited its holding in *Cage*, reasoning that the mere use of the term "moral certainty" in a jury instruction defining reasonable doubt by itself did not violate due process. The Court determined that the term "moral certainty," read in the context of the instruction in *Victor*, merely impressed upon the jury the need to reach a subjective state of near-certitude of guilt. The Court

-14-

found no reasonable likelihood that the jury would have understood the phrase to be disassociated from the evidence in that case.  511 U.S. at 14-16.  The Court also found that use of the term "moral certainty" in the Nebraska jury instruction on reasonable doubt did not violate due process because the jurors were further instructed that they had to have an abiding conviction as to the defendant's guilt; the instruction equated doubt sufficient to preclude moral certainty with doubt that would cause a reasonable person to hesitate to act; and the jurors were told that they should be governed solely by the evidence introduced before them, without indulging in speculation, conjectures, or inferences not supported by the evidence.  *Id.* at 21-22.  The Court distinguished these jury instructions from the instruction found unconstitutional in *Cage*, noting that in *Cage* the instruction merely told the jury that they had to be morally certain of the defendant's guilt without any additional explanations that would give meaning to the phrase "moral certainty."  *Ibid.*

The Sixth Circuit has held that the use of the term "moral certainty" does not automatically render a jury instruction on reasonable doubt fundamentally unfair.  In *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997), the Sixth Circuit Court of Appeals ruled that a reasonable doubt instruction, which stated that moral certainty was required to convict the defendant on a criminal charge, did not impermissibly lower the burden of proof.  The instruction in that case included an additional statement that reasonable doubt was engendered by "an inability to let the mind rest easily" after considering all of the proof in the case.  *Ibid*.  That language, the court believed, lent content to the phrase "moral certainty."  *Ibid*.  In context, the court concluded, the phrase did not create a reasonable likelihood that the jury impermissibly applied the jury instruction.  *Ibid; see also Cone v. Bell*, 243 F.3d 961, 971-72 (6th Cir. 2001), *reversed on other grounds by Bell v. Cone*, 535 U.S. 685 (2002).

-15-

This Court likewise concludes that use of the term "moral certainty" in the jury instructions at issue did not impermissibly lower the burden of proof because the rest of the jury instructions lent content to that phrase. Unlike the trial court in *Cage*, the trial judge in the present case gave a lengthy instruction that adequately explained the concept of reasonable doubt and emphasized that the prosecutor bore the burden of proof. The trial court provided sufficient context for the statements defining reasonable doubt with the instruction that "the proofs presented by the People must eliminate any doubt based upon reason. The People must eliminate any doubt arising out of the evidence which has a real, a rational, and a reasonable basis." Tr. (Mar. 3, 1995) at 52. Furthermore, the instruction equating proof beyond a reasonable doubt with "evidence . . . such as you would be willing to rely and act upon in the most important of your own affairs" has been found to be curative in other cases in which ambiguous terms have cast into question the meaning of reasonable doubt. The trial court also instructed the jury that (1) the petitioner was presumed innocent (2) the burden of proof never shifted from the prosecution; (3) the petitioner was not required to come forward with any evidence; and (4) a failure to prove guilt beyond a reasonable doubt must result in an acquittal. The petitioner is therefore not entitled to habeas relief on this claim.

### B.

In his second substantive claim, the petitioner contends that the trial court violated the Fifth Amendment's guarantee against self-incrimination by considering the petitioner's failure at the sentence hearing to explain the circumstances behind the shooting.

At sentencing, the trial court attempted to elicit from the petitioner an account of the events surrounding the shooting, apparently because the petitioner had declined to tell the pre-sentence

-16-

investigator what had happened.  The petitioner's counsel explained that the shooting was precipitated by a fight between several women outside the bar and characterized it as a "combative-type situation."  Sent. Tr. at 4, 8-9.  The trial court noted that there had been no fight between the petitioner and the victim and went on to state:  "Mr. Paluska, for whatever reason, led himself into this and established himself and asserted himself as a leader. . . . I still don't understand Mr. Paluska, and I hope that he has something to say for himself today."  *Id.* at 10-11.  When the petitioner's attorney admitted that everyone involved in the incident had exhibited poor judgment, the trial court stated that she would agree if defense counsel was referring to the women in the fight, but as for the petitioner, "I want you to explain."  *Id*. at 12.  The court stated that she did not understand the petitioner's role in incident and asked counsel to give her a "common sense" explanation so she would know the petitioner's part in the dispute and brawl that ended in the shooting.  *Ibid*.  Defense counsel informed the court that the petitioner continued to maintain his innocence, to which the trial court responded, "Well, that's all right."  *Id*. at 13.  Then the court asked the petitioner if he wished to say anything, and the petitioner responded that if he had done his job that night and called the police "instead of getting caught up in the stupidity of the incident," he would not be in court.  *Ibid*.  The petitioner said that he was sorry for what had happened.

The victim's girlfriend, Priscilla Moza, appeared in court at the sentencing.  The court asked Moza if she knew why the petitioner became involved in this altercation, but Moza did not know.  The court explained that if someone could give a reason, even a bad reason, for the petitioner's involvement in the fight, she could understand that, but she was ultimately unable to resolve the question.  The court sentenced the petitioner to twenty-five to fifty years in prison, stating that she

-17-

was doing so because she did not understand why the petitioner would shoot a man in the back when the petitioner was not involved with the other parties.

The petitioner argues that the judge weighed his refusal to admit his guilt against him at sentencing.  In *Mitchell v. United States*, 526 U.S. 314, 328-29 (1999), the Supreme Court held that the Fifth Amendment right against self-incrimination prevents a sentencing court from drawing negative inferences from a defendant's silence in determining the facts relating to the circumstances and details of the crime.  However, the Supreme Court expressly declined to consider the questions of whether a defendant's silence bore upon a court's determination of lack of remorse or upon a defendant's acceptance of responsibility for the purpose of a downward departure under the federal Sentencing Guidelines, because those issues were not before the Court.  *Ibid*.

The Sixth Circuit Court of Appeals has affirmed a grant of the writ to a petitioner whose sentencing judge clearly took his failure to admit guilt into consideration in issuing his sentence. *Ketchings v. Jackson*, 365 F.3d 509, 512-14 (6th Cir. 2004).  In *Ketchings v. Jackson*, the judge issued a harsher sentence to the defendant after telling him that his failure to admit guilt for his crime at sentencing indicated that he could not be rehabilitated.  *Id*. at 513-14.  In the present case, however, the trial court's comments taken in context suggest that the court was looking for some reason or explanation from the petitioner that might justify or mitigate the shooting.  The petitioner acknowledges that his sentence of twenty-five to fifty years for second-degree murder was within the state sentencing guidelines range.  In *El v. Artuz,* 105 F. Supp. 2d 242, 254-55 (S.D.N.Y. 2000), the court rejected a habeas claim similar to the claim the petitioner makes here.  In that case, the judge told the defendant at the conclusion of his trial that he should provide an explanation for his conduct at his pre-sentence investigation and that it would "cost" him if he failed to do so.  The *El*

-18-

court concluded that the trial court did not violate the petitioner's right against self-incrimination because the statement in context merely signaled that the judge would show some leniency if an explanation were provided. *Id*. at 255. The petitioner in the present case has failed to show that the trial court's comments violated his right against self-incrimination because he has made no showing that the trial court punished the petitioner for his failure to speak; it appears that the court simply declined to grant him leniency. The sentence hearing record does not demonstrate a constitutional violation. The petitioner, therefore, is not entitled to relief on this claim.

IV.

The Court finds that the petitioner's procedural default is excused because he has established cause and prejudice. The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: January 13, 2006

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 13, 2006.

s/Tracy A. Jacobs
TRACY A. JACOBS
